UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTAYA L. MACK, | ) |
| | ) No. CV-08-00234-JPH |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on May 15, 2009. (Ct. Rec. 13, 16).  Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Stephanie R. Martz represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) On May 5, 2009, plaintiff filed a reply.  (Ct. Rec. 18.)  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

### JURISDICTION

Plaintiff protectively filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on March 1, 2005, initially alleging symptoms related to

a mental breakdown, bipolar disorder and migraine headaches.
Plaintiff later alleged she suffered from more manic episodes, as
well as back and neck pain.  (Tr. 84-88, 98, 125, 133, 144, 292-
294,.)  Both applications allege onset as of November 9, 2004.
(Tr. 84, 292.)  The applications were denied initially and on
reconsideration. (Tr. 37-38, 45-47, 284-285, 287-290.)
At a hearing before Administrative Law Judge (ALJ), Paul L.
Gaughen on October 17, 2007, and continued to January 17, 2008,
plaintiff, represented by counsel, vocational expert K. Diane
Kramer, and Kay Mack, plaintiff's mother, testified.  (Tr. 299-
308, 311-342.)  On March 8, 2008, the ALJ issued an unfavorable
decision.  (Tr. 16-26.)  The Appeals Council received additional
evidence and denied a request for review on June 26, 2008.  (Tr.
4-8.)  Therefore, the ALJ's decision became the final decision of
the Commissioner, which is appealable to the district court
pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for
judicial review pursuant to 42 U.S.C. § 405(g) on July 21, 2008.
(Ct. Rec. 1, 4.)

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing
transcripts, the ALJ's decision, the briefs of both Plaintiff and
the Commissioner, and are summarized here.

Plaintiff was 25 years old at onset and 28 at the time of the
hearing.  (Tr. 305.)  She has a high school education and one and
a half years of college. (Tr. 318.)  Plaintiff has worked as an
administrative clerk, sales coordinator and portfolio manager,
among other positions.  (Tr. 64, 120, 222.)  She testified she
worked 20 hours per week, and works as a volunteer youth leader in

her church. (Tr. 323.)  Plaintiff was having headaches daily for two months prior to the hearing, but they only affected her concentration "a little." (Tr. 323-324.) Side effects from medication include moodiness, exhaustion, and occasionally becoming short tempered.  (Tr. 324.)  Plaintiff's  hobbies include dancing, shopping and reading.  (Tr. 325.)  Plaintiff sleeps eight hours in an average night but feels exhausted.  (Tr. 320-323, 326.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are

denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If
not, the decision maker proceeds to step two, which determines
whether plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

     If plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past.  If a plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, plaintiff's residual functional capacity ("RFC")
assessment is considered.  If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon plaintiff to establish

1  a *prima facie* case of entitlement to disability benefits.
2  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
3  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
4  met once plaintiff establishes that a physical or mental
5  impairment prevents the performance of previous work.  The burden
6  then shifts, at step five, to the Commissioner to show that (1)
7  plaintiff can perform other substantial gainful activity and (2) a
8  "significant number of jobs exist in the national economy" which
9  plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
10  Cir. 1984).

11                          **STANDARD OF REVIEW**

12      Congress has provided a limited scope of judicial review of a
13  Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
14  the Commissioner's decision, made through an ALJ, when the
15  determination is not based on legal error and is supported by
16  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
17  (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
18  1999).  "The [Commissioner's] determination that a plaintiff is
19  not disabled will be upheld if the findings of fact are supported
20  by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572
21  (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
22  is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
23  1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
24  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
25  *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
26  573, 576 (9th Cir. 1988).  Substantial evidence "means such
27  evidence as a reasonable mind might accept as adequate to support
28  a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 5 -

(citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

At the outset, the ALJ found plaintiff met the DIB requirements through December 31, 2009. (Tr. 18.) The ALJ found at step one that although plaintiff earned some income after onset, she has not engaged in substantial gainful activity.  (Tr. 18.) At steps two and three, the ALJ found that plaintiff suffers from

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 6 -

affective disorder with bipolar features and panic disorder
without agoraphobia, impairments that are severe but which do not
alone or in combination meet or medically equal a Listing
impairment. (Tr. 18, 22.)  The ALJ found plaintiff less than
completely credible.  (Tr. 24.)  At step four, relying on the VE,
the ALJ found plaintiff's RFC for a full range of work, with
slight to no mental limitations, enables her to perform past
relevant work.  Some past positions within her RFC include
administrative clerk, collection associate/clerk, sales
trainer/sales agent, sales coordinator (banking), and portfolio
manager (registered representative).  (Tr. 23, 25.)  Because the
ALJ found plaintiff could perform past relevant work, she was
found not disabled at step four. (Tr. 25.)  Accordingly, the ALJ
found that plaintiff is not disabled as defined by the Social
Security Act. (Tr. 25-26.)

### ISSUES

Plaintiff contends that the Commissioner erred as a matter of
law by failing to (1) properly weigh the evidence of psychological
impairment; and (2) properly assess her credibility.  (Ct. Rec. 14
at 10-15.)  The Commissioner responds that the ALJ appropriately
weighed the evidence asks the Court to affirm his decision.  (Ct.
Rec. 17 at 2, 12-13).

### DISCUSSION

In social security proceedings, the claimant must prove the
existence of a physical or mental impairment by providing medical
evidence consisting of signs, symptoms, and laboratory findings;
the claimant's own statement of symptoms alone will not suffice.
20 C.F.R. § 416.908.  The effects of all symptoms must be

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 7 -

evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms.  *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition.  *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989).  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  More weight is given to a treating physician than an examining physician.  *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996).  Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians.  *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence.  *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and

testimony from the claimant that was inconsistent with the
treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747,
751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th
Cir. 1995).

Plaintiff contends that the ALJ failed to properly credit
the opinion of Brooke Sjostrom, MS, LMHC and Mahlon Dalley, Ph.D.,
following plaintiff's February 23, 2005, evaluation. (Ct. Rec. 14
at 10-13, referring to Tr. 229-237.) Ms. Sjostrom diagnosed
bipolar II disorder and panic disorder without agoraphobia. She
assessed marked limitations in the ability to relate appropriately
to co-workers and supervisors, interact appropriately in public
places, and respond appropriately to and tolerate the pressures
and expectations of a normal work setting. (Tr. 232, 236.)

The ALJ points out Ms. Sjostrom opined plaintiff's marked
impairments would improve and stabilize with treatment, and when
that took place she expected plaintiff would be able to return to
her previous line of work. (Tr. 19, referring to Tr. 232.) At
the time of this evaluation, plaintiff was taking no medication
and was not otherwise receiving mental health treatment. (Tr.
229.) Ms. Sjostrom assessed a current GAF of 59.[1] (Tr. 232.)

---

[1]
A Global Assessment of Functioning (GAF) of 59 indicates
moderate symptoms (e.g., flat affect and circumstantial speech,
occasional panic attacks) or moderate difficulty in social,
occupational or school functioning (e.g., few friends, conflicts
with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF
MENTAL DISORDERS FOURTH EDITION (DSM-IV), at p. 32.

It appears Ms. Sjostrom's opinion that plaintiff's symptoms would resolve with treatment was correct.  On October 25, 2005, about eight months later, treating physician Jan Mueller, M.D., notes plaintiff feels "well controlled at current medications" for her bipolar disorder.  (Tr. 160.)  Dr. Mueller diagnosed bipolar affective disorder, mixed, unspecified; migraine; cervical pain; insomnia (transient), and excess sweating.  (Tr. 160.)

To the extent the ALJ rejected the marked impairments assessed by Ms. Sjostrom, he did so because Ms. Sjostrom expected plaintiff's symptoms to fully resolve with treatment.  This reason is specific, legitimate, and fully supported by the evidence.

The ALJ considered the records and opinions of treating providers Dr. Mueller, Patricia Carlson, ARNP, Stacey Mainer, ARNP, Carol Miller, ARNP, and Bill Martin, RN. (Tr. 19-22, 24-25.) The ALJ notes Dr. Mueller reported as early as April of 2005 plaintiff's bipolar disorder was well controlled.  (Tr. 24.)  He notes too that in a follow up appointment in June of 2005, plaintiff reported her migraines were very well controlled, and although she continued to have occasional racing thoughts, her depressive symptoms were under excellent control. (Tr. 24.)

The ALJ observes Nurse Carlson's note that plaintiff's mania increased in July of 2005, and medications were adjusted. (Tr. 24.)  Significantly, Nurse Carlson "reported this was due to becoming upset that her SSI case might be affected by a change in schedule." (Tr. 24, referring to Tr. 173.)  Nurse Carlson indicates that plaintiff declined an offer of a support group even though it is within walking distance of plaintiff's home.  (Tr. 173.)  The ALJ notes Nurse Carlson assessed a GAF of 60-70

indicating moderate symptoms.  (Tr. 24, referring to Tr. 173.)

The ALJ notes that the next month, August of 2005, plaintiff told Dr. Mueller she felt well balanced and satisfied in general. (Tr. 24, referring to Tr. 168.)  In September of 2005, plaintiff's bipolar symptoms were well controlled, although she suffered medication side effects of hair loss and tremor.  (Tr. 24, referring to Tr. 162.)  Records indicate that in March of 2006, plaintiff's bipolar disorder was well controlled.  (Tr. 24, referring to Tr. 251.) Similarly, the ALJ notes that in December of 2006, plaintiff's bipolar disorder continued to be well managed, and she denied depression or anxiety.  (Tr. 24, referring to Tr. 255.)  Plaintiff's mania and racing thoughts increased in September of 2007 when she stopped taking  medications for financial reasons.  Medication was restarted. (Tr. 24, referring to Tr. 276, dated October 26, 2007.) Plaintiff told Nurse Martin she had not been depressed since 2004.  He assessed a GAF of 70-80, indicating only mild symptoms.  (Tr. 272.)

The ALJ notes the records indicate plaintiff's headaches and mental health problems have continually improved on medication, with relapses only when medications are stopped. (Tr. 24.)  The ALJ also observes that plaintiff's ability to work (although part-time) in late 2006 and through 2007 indicates improved functioning overall.

The ALJ was persuaded by the medical and other evidence  when he assessed plaintiff's physical and psychological impairments. There is no evidence in the medical record that plaintiff's condition worsened.

To further aid in weighing the conflicting medical evidence,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 11 -

the ALJ evaluated plaintiff's credibility and found her less than fully credible. (Tr. 24.) Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ relied on several factors when he assessed credibility: inconsistent statements, improvement when taking prescribed medication, and activities inconsistent with the degree of impairment alleged, including the ability to work part-time, volunteer, and dance. (Tr. 24.) As the ALJ concludes, there are few, if any, medical, behavioral health or self-reports to support plaintiff's testimony that she is unable to perform full time

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 12 -

1  work.  (Tr. 24.)

2      Plaintiff's activities, as noted, include working 20 hours

3  per week, volunteering as a youth leader in her church, washing

4  dishes, laundry, cleaning, cooking, shopping, driving, dancing and

5  going to church weekly.  (Tr. 118, 120-122, 321-325.)

6      The ALJ notes Plaintiff testified she could not stand the

7  pressures of full time work due to severe headaches and fatigue.

8  (Tr. 24).  The record does not support her assertion, as the ALJ

9  points out:

10         . . . the record consistently indicates that after
        the original diagnosis of bipolar disorder in January
11        2005, she had continued improvement in her symptoms
        with treatment, beginning in March 2005. As early as
12        April 2005, Dr. Mueller reported her [plaintiff's]
        bipolar disorder was well controlled. In follow up
13        in June 2005, she reported to Dr. Mueller that her
        migraines were very well controlled and although she
14        continued to have occasional racing thoughts, her
        depressive symptoms were under excellent control.
15        There was a period of increased mania in July 2005,
        and her medications had to be adjusted, however,
16        Nurse Carlson reported this was due to becoming upset
        that her SSI case might be affected by a change in
17        schedule.  Group resources were offered at that time,
        however, she declined. Nurse Carlson assessed global
18        assessment of functioning of 60-70 indicating moderate
        symptoms. By August 2005, she told Dr. Mueller she felt
19        well balanced and satisfied in general.  In follow up
        in September 2005, she had some side effects of
20        medication, including tremor and hair loss; otherwise,
        her symptoms were well controlled. In follow up in March
21        2006, her bipolar disorder was well controlled.

22  (Tr. 24.)

23      The ALJ is correct that when plaintiff failed to take

24  medication for headaches as prescribed, allegedly due to lack of

25  funds, symptoms increased. (Tr. 24.)  Symptoms which are well

26  controlled on medication do not support finding disabling

27  impairments.

28      The ALJ's reasons for finding plaintiff less than fully

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 13 -

credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities).  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

To the extent the ALJ rejected the contradicted opinions of some of the professionals, his reasons are legitimate, specific, and supported by substantial evidence in the record.  *See Lester v. Chater*, 81 F. 3d 821, 830-831 (9th Cir. 1995) (holding that the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician's contradicted opinion).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405 (g).

The ALJ's finding that plaintiff's headaches are not a severe impairment, because successfully treated with medication, is supported by the record.

The ALJ's assessment of the medical evidence and of

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 14 -

1  plaintiff's credibility is supported by the record and free of

2  legal error.

3                          **CONCLUSION**

4       Having reviewed the record and the ALJ's conclusions, this

5  court finds that the ALJ's decision is free of legal error and

6  supported by substantial evidence..

7       **IT IS ORDERED:**

8       1. Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is

9  **GRANTED.**

10      2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is

11 **DENIED.**

12      The District Court Executive is directed to file this Order,

13 provide copies to counsel for Plaintiff and Defendant, enter

14 judgment in favor of Defendant, and **CLOSE** this file.

15      DATED this 18th day of May, 2009.

16                                  s/ James P. Hutton
                                   JAMES P. HUTTON
17                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 15 -